# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

———————————————————— :
                                              :
DARRELL JAMES DeBREW,                         :
                                              :
                    Plaintiff,                :
                                              :
        v.                                    :        Civil Action No. 10-0650 (JDB)
                                              :
MICHAEL ATWOOD, *et al.*,                     :
                                              :
                    Defendants.               :
———————————————————— :

## MEMORANDUM OPINION

This matter is before the Court on Defendants' Motion to Dismiss or in the Alternative for Summary Judgment [Dkt. #31] and plaintiff's Motion for Summary Judgment [Dkt. #35], Request to Amend Complaint [Dkt. #36], Motion for Stay Until All Freedom of Information Act Requests Are Fulfilled by Federal Bureau of Prisons [Dkt. #37], and Motion to Change Venue [Dkt. #41].  For the reasons discussed below, defendants' motion will be granted in part and denied in part, and the remaining motions will be denied.

## I.  BACKGROUND

### A.  *Freedom of Information Act Claims*

Plaintiff brings this action in part under the Freedom of Information Act ("FOIA"), *see* 5 U.S.C. § 552, against the Federal Bureau of Prisons ("BOP"), a component of the United States

Department of Justice ("DOJ").[1]   He challenges the BOP's responses, or lack of responses, to FOIA requests submitted to the BOP in 2007, 2008 and 2009.

### 1.  Memoranda Pertaining to the DNA Act[2]

According to plaintiff, on June 24, 2008, he sent FOIA requests for memoranda concerning the DNA Act to the Low Security Correctional Institution at Butner, North Carolina ("LSCI Butner"), the BOP's Mid-Atlantic Regional Office in Annapolis Junction, Maryland, and to the BOP's Central Office in Washington, D.C.  Compl. ¶¶ 13, 16, 20.  Staff at LSCI Butner returned the request via institutional mail, *id.* ¶ 14, and plaintiff received a notice from the Mid-Atlantic Regional Office informing him "that he had to contact the BOP Central Office" in order to pursue his request, *id.* ¶ 18.

The Central Office received plaintiff's request on June 30, 2008, assigned it a tracking number (FOIA Number 2008-8573), and promptly returned the request without processing it.  Mem. of P. & A. in Supp. of Defs.' Mot. to Dismiss or in the Alternative for Summ. J. ("Defs.' Mem."), Ex. B ("Moorer Decl.") ¶ 7.  The Central Office determined that the request did "not adequately describe" the records plaintiff wanted, and plaintiff was instructed to "submit another request" when he "determined the specific Program Statement" of interest.  Moorer Decl., Ex. 4 (Letter to plaintiff from the BOP's FOIA/PA Office dated July 10, 2008) at 1.  According to the

---

[1]     The only proper defendant in a FOIA action is a federal agency to which the statute applies, *see* 5 U.S.C. § 551(f)(1), not an individual government official, *see, e.g., Sherwood Van Lines v. Dep't of the Navy*, 732 F. Supp. 240, 241 (D.D.C. 1990).  In this case, the proper defendant is the DOJ.  For simplicity, the Court may refer to this defendant as the BOP.

[2]     Presumably plaintiff is referring to the DNA Analysis Backlog Elimination Act of 2000, *see* 42 U.S.C. 14135a, which, among other provisions, authorizes the collection of DNA samples from certain violent and sexual offenders.

BOP's declarant, "[p]laintiff has not followed-up with the [BOP] regarding this request and the [BOP's] response." *Id.* ¶ 7.

### 2. Code 408[3]

On September 5, 2007, plaintiff submitted a FOIA request to the BOP's Central Office for "[a]ll documentation concerning making Conducting A Business (408) a prohibited act." Compl. ¶ 23; *see* Moorer Decl., Ex. 5 (Freedom of Information/Privacy Act Request dated September 5, 2007). The Central Office responded to the request, which was assigned Request No. 2007-10012, by releasing "Program Statement 5270.07 that covers prohibited act Code 408." Moorer Decl. ¶ 9; *see id.,* Ex. 6 (Letter to plaintiff from W.M. Hunt, Chief, FOIA/PA Section, BOP) at 1. Plaintiff acknowledged receipt of the Program Statement, *see* Compl. ¶ 24, and complained that the BOP "failed to adequately supply information" in response to the request, *id.* ¶ 26, by providing "documents as to how Code 408 came into existence," *id.* ¶ 25. Plaintiff was advised of his right to pursue an administrative appeal to the Justice Department's Office of Information Policy ("OIP"). Defs.' Mem., Moorer Decl. ¶ 9. The OIP affirmed the determination. Pl.'s Mot. for Summ. J. and Resp. to Defs.' Mot. for Summ. J. and Dismissal ("Pl.'s Opp'n"), Ex. 16 (Letter to plaintiff from Anne D. Work, Deputy Chief, Administrative Appeals Staff, OIP, dated November 28, 2008).

### 3. Administrative Remedy Index for LSCI Butner

On June 24, 2008, plaintiff submitted to LSCI Butner a request for "the Administrative Remedy Index for LSCI Butner," Compl. ¶ 27, and, according to plaintiff, "said request has

---

[3]     Presumably, Code 408 is a reference to a prohibited act, conducting a business, for which an inmate can be disciplined. *See* 28 C.F.R. § 541.3 (Table 1 – Prohibited Acts and Available Sanctions).

remained unanswered and unfulfilled," *id.* ¶ 28.  The BOP's declarant averred that there was no record of receipt by the Central Office of a request "for the Administrative Remedy on or about June 24, 2008."  Moorer Decl. ¶ 12.

### 4.  Financial Reports for the Trust Fund

On August 13, 2009, plaintiff allegedly submitted to the Central Office a request for "Financial Reports for the Trust Fund for 2006-2009," Compl. ¶ 30, and the Central Office "has failed to provide the requested records," *id.* ¶ 31.  The BOP, however, had no record of receipt of this request.  Moorer Decl. ¶ 13.

### 5.  Public Law 104-134

Plaintiff allegedly submitted a FOIA request to the Central Office on August 13, 2009, for "Section 108 to Department of Justice, General Provisions, Public Law 104-134," Compl. ¶ 32, which apparently has not been released to him.  The BOP had no record of receipt of this request either.  Moorer Decl. ¶ 15.

### 6.  Telephone Records

On May 15, 2007, plaintiff submitted a request for "copies of all phone records," and on June 12, 2007 the BOP's Mid-Atlantic Regional Office responded.  Compl. ¶ 34; *see* Moorer Decl., Ex. 8 (Letter to plaintiff from M. Fuseyamore, Regional Counsel, Mid-Atlantic Region, BOP, dated June 12, 2007).  Plaintiff complained that the BOP released only "copies of the phone numbers he had called, instead of the actual phone calls, as requested."  Compl.  ¶ 35. Plaintiff pursued an administrative appeal of this decision, Moorer Decl., Ex. 9 (Letter to OIP,

U.S. Department of Justice, from plaintiff dated June 1, 2007), indicating that he sought the recordings of the conversations which "are monitored and recorded" by the BOP.  *Id.*

Noting that the BOP "no longer ha[d] the actual recordings of [plaintiff's] phone conversations," the OIP affirmed the BOP's decision.  Moorer Decl., Ex. 11 (Letter to plaintiff from P. Jones, Supervisory Administrative Specialist, OIP, dated July 12, 2007) at 1.  Even if the recordings were available, the OIP noted that the recordings "would be exempt from release pursuant to 5 U.S.C. § 552(b)(7)(C) as the telephone recordings were compiled for law enforcement purposes."  *Id.*, ¶ 17.

### B.  *Constitutional Claims*

#### 1.  Alleged Violations of the First Amendment

Apparently plaintiff is a published author, Compl. ¶ 39, whose book entitled *Keisha* is available for purchase online, *see id.* ¶ 40.  Plaintiff alleges that he was found guilty of a disciplinary violation (Code 408 (Conducting a Business)) and was "ordered to remove his Web-Page from the World Wide Web and not use the mail in regards to his books and manuscripts," ¶ 39, in violation of his First Amendment right to freedom of expression, *id.* ¶ 41.

#### 2.  Alleged Violations of the Fifth Amendment

Also with respect to his publishing activity, plaintiff states that he "was found guilty of Code 408 (Conducting a Business) because [he] receiv[ed] a Royalty Check . . . for [his] book entitled *Keisha*," *id*. ¶ 40, and he alleges that his "property rights have been limited in violation of the Fifth Amendment," *id.* ¶ 41.

Plaintiff alleges a second violation of the Fifth Amendment, the Takings Clause, *id.* ¶ 38, by defendants' refusal to credit individual inmate accounts with interest income derived from depositing "inmate funds in the . . . Commissary Fund and/or Trust Fund" in interest-bearing accounts, *id.* ¶ 37.

### 3.  Alleged Violations of the Eighth Amendment

Plaintiff alleges that defendants subject him to cruel and unusual punishment in violation of the Eighth Amendment by having no population caps on BOP facilities, *id.* ¶ 44, leading to prison overcrowding, *id.* ¶ 47.  In addition, plaintiff contends that defendants violate his rights by marking up the prices of commissary items, telephone calls and other fees, *id.* ¶¶ 53-56, without a commensurate increase in inmate incentive pay, *see id.* ¶¶ 50-51.

### C. Relief

Plaintiff demands a declaratory judgment, injunctive relief, and monetary damages totalling $10 billion.  *See generally* Compl. (Relief).

## II.  DISCUSSION

### A. Standards of Review

### 1.  Dismissal Under Rule 12(b)(6)

A plaintiff need only provide a "short and plain statement of [his] claim showing that [he] is entitled to relief," Fed. R. Civ. P. 8(a)(2), that "give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus,* 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)) (internal quotation marks omitted).  A complaint may be dismissed for failure to state a claim upon which relief can

be granted.  Fed. R. Civ. P. 12(b)(6).  In considering such a motion, the "complaint is construed liberally in the plaintiff['s] favor, and [the Court] grant[s] plaintiff[] the benefit of all inferences that can be derived from the facts alleged."  *Kowal v. MCI Comm'cns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994); *see Sparrow v. United Air Lines, Inc.,* 216 F.3d 1111, 1113 (D.C. Cir. 2000).

A complaint survives a motion under Rule 12(b)(6) only if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal,* 556 U.S. 662, __, 129 S.Ct. 1937, 1949 (2009).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*, 129 S.Ct. at 1949 (quoting *Twombly,* 550 U.S. at 556). "A complaint alleging facts which are merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility of entitlement to relief."  *Id.* (internal quotation marks omitted) (citing *Twombly*, 550 U.S. at 557).  A *pro se* complaint "must be held to less stringent standards than formal pleadings drafted by lawyers," *Erickson,* 551 U.S. at 94 (internal quotation marks and citation omitted), but it, too, "must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'"  *Atherton v. District of Columbia Office of the Mayor*, 567 F.3d 672, 681-82 (D.C. Cir. 2009) (quoting *Iqbal*, 129 S.Ct. at 1950).

## 2.  Summary Judgment Under Rule 56

Summary judgment is appropriate when the pleadings and evidence show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995).  To determine which facts are

"material," a court must look to the substantive law on which each claim rests.  *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is genuine if its resolution could

establish an element of a claim or defense and thus affect the outcome of the action. *Celotex*, 477

U.S. at 322; *Anderson*, 477 U.S. at 248.

      In ruling on a motion for summary judgment, the Court draws all justifiable inferences in

the nonmoving party's favor and accepts the nonmoving party's evidence as true.  *Anderson*, 477

U.S. at 255.  A nonmoving party, however, must establish more than "the mere existence of a

scintilla of evidence" in support of his position.  *Id.* at 252.  He may defeat summary judgment

through factual representations made in a sworn affidavit if he "support[s] his allegations . . .

with facts in the record," *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999) (quoting *Harding*

*v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993)), or provides "direct testimonial evidence," *Arrington*

*v. United States*, 473 F.3d 329, 338 (D.C. Cir. 2006).  Indeed, for the Court to accept anything

less "would defeat the central purpose of the summary judgment device, which is to weed out

those cases insufficiently meritorious to warrant the expense of a jury trial."  *Greene*, 164 F.3d at

675.

      "FOIA cases typically and appropriately are decided on motions for summary judgment."

*Defenders of Wildlife v. U.S. Border Patrol*, 623 F.  Supp.  2d 83, 87 (D.D.C. 2009).  In a FOIA

action to compel production of agency records, the agency "is entitled to summary judgment if

no material facts are in dispute and if it demonstrates 'that each document that falls within the

class requested either has been produced . . . or is wholly exempt from the [FOIA's] inspection

requirements.'"  *Students Against Genocide v. Dep't of State*, 257 F. 3d 828, 833 (D.C. Cir.

2001) (quoting *Goland v. Cent. Intelligence Agency*, 607 F.2d 339, 352 (D.C. Cir. 1978)).

Summary judgment may be based solely on information provided in an agency's supporting

affidavits or declarations if they are relatively detailed and when they describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record [or] by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981); *see Beltranena v. Clinton*, 770 F. Supp. 2d 175, 182 (D.D.C. 2011).

### B.  Freedom of Information Act Claims

### 1.  Searches for Records Responsive to Plaintiff's FOIA Requests

Generally, upon receipt of a request under the FOIA, an agency must search its records for responsive documents. *See* 5 U.S.C. § 552(a)(3)(A).  To satisfy its burden on summary judgment to show that no genuine issue of material fact exists, the agency must show that it "has conducted a search reasonably calculated to uncover all relevant documents," *Elliot v. U.S. Dep't of Agric.*, 596 F.3d 842, 851 (D.C. Cir. 2010) (quoting *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983)); *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) ("An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'") (quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990)).  The agency may submit affidavits or declarations that explain in reasonable detail the scope and method of its search. *Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982).  In the absence of contrary evidence, such affidavits or declarations are sufficient to demonstrate an agency's compliance with the FOIA. *Id*. at 127.  On the other hand, if the record "leaves substantial doubt as to the sufficiency of the

search, summary judgment for the agency is not proper." *Truitt*, 897 F.2d at 542; *see also*

*Valencia-Lucena*, 180 F.3d at 326.

### a.  E-Works and SENTRY

The BOP's search for records responsive to plaintiff's FOIA requests involves two

databases: E-Works and SENTRY.  *See* Moorer Decl. ¶ 2.  E-Works is a "computerized database

for FOIA/PA requests."  *Id.*  ¶ 3.  "SENTRY . . . contains record entries concerning an inmate's

confinement," and these entries "can also be found in an inmate's Central File."  *Id.*  A Central

File generally "contains information related to an inmate's daily incarceration," and "oftentimes

a search for inmate specific records pursuant to a FOIA request will be first conducted by

reviewing an inmate's Central File."  *Id.*

### b.  Code 408

As stated above, the BOP released a copy of Program Statement 5270.07 in response to

plaintiff's request for documentation making conducting a business (Code 408) a prohibited act.

Plaintiff contends that the BOP's search for information about Code 408 was inadequate in that it

yielded no documentation pertaining to the decisonmaking process resulting in the Program

Statement 5270.07.  *See* Pl.'s Opp'n at 38.  He claims that "there wasn't a search" at all.  *Id.* at

39.  Plaintiff appears to argue that the BOP should have interpreted the request as one for records

generated in the course of deciding to make "conducting a business" a prohibited act; following

this argument, had the BOP properly interpreted his request, its search would have yielded

responsive records.

Where a requester challenges an agency's search, "the issue to be resolved is not whether

there might exist any other documents possibly responsive to the request, but rather whether the

search for those documents was adequate." *Weisberg*, 705 F.2d at 1351 (citing *Perry*, 684 F.2d

at 128).  On summary judgment, the agency must demonstrate that its search was reasonably

calculated to locate records responsive to plaintiff's request.  Here, the BOP's declarant only

states the result of the search – a program statement regarding the inmate discipline – without

offering a description of either the agency's interpretation of the request or the method by which

staff conducted the search.  The Court cannot conclude on the current record that the BOP's

search was reasonable under the circumstances.

### c.  Telephone Records

Regarding telephone records, plaintiff again challenges the BOP's interpretation of a

FOIA request and the search it conducted.  *See* Pl.'s Opp'n at 39.  He asserts that his request for

"all . . . telephone records . . . from November 1994" through the date of his request, Moorer

Decl., Ex. 7 (Freedom of Information/Privacy Act Request dated May 15, 2007), should have

been interpreted to include not only "copies of the phone numbers he had called," Compl. ¶ 35,

but also recordings of those calls.  *See* Moorer Decl., Ex. 9 (Letter to OIP from plaintiff dated

June 1, 2007).

The adequacy of an agency's search is measured by a standard of reasonableness under

the attendant circumstances.  *Truitt*, 897 F.2d at 542.  The BOP is not obligated to create records

in order to respond to a FOIA request, *see Nat'l Labor Relations Bd. v. Sears, Roebuck & Co.*,

421 U.S. 132, 162 (1975) (holding that agency was not required to create explanatory materials),

and an agency does not violate the FOIA by failing to produce records which had been

destroyed, *see Anderson v. U.S. Dep't of Justice*, 518 F. Supp. 2d 1, 9-10 (D.D.C. 2007) (holding

that agency did not violate the FOIA by failing to locate records destroyed pursuant to retention

policy); *see also Jones v. Fed. Bureau of Investigation*, 41 F.3d 238, 249 (6th Cir. 1994) ("In the context of a FOIA action, we cannot order the FBI to make amends for any documents destroyed prior to the request because a FOIA request pertains only to material in the possession of the agency at the time of the request."). Here, it was determined that the BOP "no longer ha[d] the actual recordings of these conversation[s]," and therefore it could not fulfill this portion of the request. Moorer Decl., Ex. 10 (Letter to plaintiff from A.D. Work, Deputy Chief, Administrative Appeals Staff, OIP, dated May 28, 2008). The inability to produce recordings of plaintiff's telephone conversations during the relevant time period does not render the BOP's search inadequate or its response to the request inappropriate.

### 2. Exhaustion of Administrative Remedies

"Exhaustion of administrative remedies is generally required before seeking judicial review" under the FOIA. *Wilbur v. Cent. Intelligence Agency*, 355 F.3d 675, 677 (D.C. Cir. 2004) (per curiam). Exhaustion allows "the agency [] an opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision." *Id.* (quoting *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 61 (D.C. Cir. 1990)). Exhaustion under the FOIA is not a jurisdictional requirement, *Hidalgo v. Fed. Bureau of Investigation*, 344 F.3d 1256, 1258 (D.C. Cir. 2003), but instead is a prudential consideration. *Wilbur*, 355 F.3d at 677. If a requester has not exhausted his administrative remedies prior to the filing of a civil action, his claim is subject to dismissal. *See Hidalgo*, 344 F.3d at 1258.

Exhaustion requires a requester to comply with agency regulations for the submission of a FOIA request. *See Church of Scientology v. Internal Revenue Serv.*, 792 F.2d 146, 150 (D.C. Cir. 1986); *see also* 28 C.F.R. §§16.1(b), 16.3(a) (requirements for making a FOIA request to a

component of the DOJ).   Program Statement 1351.05, <u>Release of Information</u> (Sept. 19, 2002)

("P.S. 1351.05"), sets forth the requirements for an inmate's FOIA request for information

maintained in records of the Federal Bureau of Prisons ("BOP").   Generally, an inmate's request

must be made in writing, P.S. 1351.05 at 25, must "clearly describe the records sought, including

the approximate dates covered by the record," *id.* at 26, and be addressed to the BOP's Director

at the Washington, D.C. headquarters ("Central Office"), *id.* at 25, for handling by the FOIA/PA

Administrator at the Office of General Counsel ("OGC"), *id.* at 27.

     The BOP argues that plaintiff failed to exhaust his administrative remedies with respect

to four FOIA requests.  *See* Defs.' Mem. at 33-36.

          a.  Memoranda Regarding the DNA Act (FOIA No. 2008-08573)

     The BOP found that plaintiff's request for "[a]ll memos concerning DNA Act," Pl.'s

Opp'n, Ex. 17 (Freedom of Information/Privacy Act Request dated June 24, 2009), did "not

adequately describe the document request."  Moorer Decl., Ex. 4 (Letter to plaintiff from

FOIA/PA Office, BOP, dated July 10, 2008).  The BOP further explained:

> There is no Program Statement that specifically covers the area of
> your request.  While this issue may be discussed in some Program
> Statement, the FOIA does not require federal agencies to do the
> legal research necessary to locate the Program Statement that
> covers the area of your concern.  Once you have determined the
> specific Program Statement you need, you may submit another
> request.
>
> If you believe the above determination is incorrect, you may
> resubmit your request.  Please reference this request and explain
> why you think the decision was in error.

*Id.*, Ex. 4 at 1.  According to the declarant, plaintiff "has not followed-up with the [BOP]

concerning this request and the [BOP's] response."  *Id.* ¶ 7.

According to plaintiff, he did not receive the Central Office's response to this request, and he now asserts that, had he received a response, he would have clarified or narrowed his request. *See* Pl.'s Opp'n at 41.  His unsupported assertions, however, do not overcome the BOP's showing on summary judgment.  Plaintiff took no action at the agency level and thus failed to exhaust his administrative remedies with respect to his request for information about the DNA Act prior to filing this lawsuit.

b.  Requests for Administrative Remedy Index,
Reports for the Trust Fund, and Public Law 104-134

The BOP's declarant states that the Central Office has no record of receipt of plaintiff's requests for the Administrative Remedy Index for LSCI Butner, Financial Reports for the Trust Fund between 2006 and 2009, or Public Law 104-134.  *See* Moorer Decl. ¶¶ 11, 13, 15. Plaintiff responds by submitting a copy of his request addressed to "LSCI's Warden Office" for an "Administrative Remedy Index."  Pl.'s Opp'n, Ex. 18 (Freedom of Information/Privacy Act Request dated June 24, 2008).  He also submits copies of his requests, both addressed to BOP's Central Office, for "Section 108 of the Department of Justice, General Provision, Public Law 104-134," *id.*, Ex. 10 (Freedom of Information/Privacy Act Request dated August 13, 2009), and for "Financial reports for the Trust Fund for 2006-2009," *id.*, Ex. 21 (Freedom of Information/Privacy Act Request dated August 13, 2009).

Submission of a FOIA request to a facility's Warden does not comply with the BOP's regulations, and hence it is not a proper request.   Although plaintiff may have directed the other requests properly to the Central Office, he does not show that the Central Office actually received them.  "Without any showing that the agency received the request, the agency has no obligation to respond to it."  *Hutchins v. Dep't of Justice*, No. 00-2349, 2005 WL 1334941, at

- 14 -

*1-2 (D.D.C. June 6, 2005).  With respect to these three requests, then, plaintiff has not exhausted his administrative remedies.  *See Willis v. U.S. Dep't of Justice*, 581 F. Supp. 2d 57, 68 (D.D.C. 2008); *Banks v. Lappin*, 539 F. Supp. 2d 228, 235 (D.D.C. 2008).

In summary, the BOP has fulfilled its obligations under the FOIA with respect to plaintiff's requests for information about the DNA Act, telephone records, the LSCI Butner Administrative Remedy Index, Reports for the Trust Fund, and Public Law 104-134, but its search for records responsive to plaintiff's request for information on Code 408 was inadequate. The Court will grant in part and deny in part without prejudice defendant's motion for summary judgment on plaintiff's FOIA claims.

### C.  Constitutional Claims

#### 1.  Plaintiff is Not an Appropriate Class Representative

Plaintiff is a federal prisoner who is proceeding *pro se*.  *See* Compl. ¶ 3.  Although he purports to bring his constitutional claims on behalf of a class of federal prisoners, *see id.* ¶ 1, he cannot do so.  Plaintiff may represent himself as a *pro se* litigant, but he is not qualified to appear on behalf of another person.  *See* 28 U.S.C. § 1654; *Georgiades v. Martin-Trigona*, 729 F.2d 831, 834 (D.C. Cir. 1984).

One or more members of a class may sue on behalf of all members under specified conditions.  *See* Fed. R. Civ. P. 23(a).  In order to obtain certification of a class, the prospective class representative "bear[s] the burden of showing that a class exists, that all four prerequisites of Rule 23(a) of the Federal Rules of Civil Procedure have been met and that the class falls within at least one of the three categories of Rule 23(b) of the Federal Rules of Civil Procedure." *Pigford v. Glickman*, 182 F.R.D. 341, 345 (D.D.C.1998); *see Franklin v. Barry*, 909 F. Supp. 21,

30 (D.D.C.1995).  Of particular importance here is the requirement that the prospective class

representative "will fairly and adequately protect the interests of the class."  Fed. R. Civ .P.

23(a)(4).  Plaintiff is without legal training, and hence he is unable to represent the interests of

the proposed class of inmates.  *See Heard v. Caruso*, 351 Fed. App'x 1, 12 (6th Cir. 2009)

(holding that "[t]he district court did not abuse its discretion in declining to certify the class and

appoint [the incarcerated *pro se* inmate plaintiff] as class representative"); *Oxendine v. Williams*,

509 F.2d 1405, 1407 (4th Cir. 1975) ("[It] it is plain error to permit this imprisoned litigant who

is unassisted by counsel to represent his fellow inmates in a class action.").

2.  Plaintiff's *Bivens* Claims Against the BOP and the Individual
Defendants in their Official Capacities Will Be Dismissed

An action under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403

U.S. 388 (1971), "is the federal analog to suits brought against state officials under . . . 42 U.S.C.

§ 1983," *Marshall v. Fed. Bureau of Prisons*, 518 F. Supp. 2d 190, 193 (D.D.C. 2007) (citing

*Hartman v. Moore*, 547 U.S. 250, 254 n.2 (2006) (internal citation omitted)), affording a plaintiff

"an implied private action for damages against federal officers alleged to have violated [his]

constitutional rights."  *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001).  Here,  plaintiff

purports to bring *Bivens* claims against both the BOP and the individual defendants in their

official capacities for alleged violations of his First, Fifth and Eighth Amendment rights.

Defendants move to dismiss all of plaintiff's *Bivens* claims.  *See* Defs.' Mem. at 9-11.

Defendants first argue, *see* Defs.' Mem. at 9-10, and the Court concurs, that there is no

*Bivens* action as against either the federal government directly or a federal government agency.

*See Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 484-86 (1994).  Generally, under the

doctrine of sovereign immunity, the federal government and its agencies are immune from suit,

unless Congress has expressly waived immunity. *See id.* at 475; *United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."). The terms of the government's consent to be sued define this Court's jurisdiction. *See United States v. Sherwood*, 312 U.S. 584, 586 (1941). It is settled that "[s]overeign immunity . . . bar suits for money damages against officials in their *official* capacity absent a specific waiver by the government," *Clark v. Library of Congress*, 750 F.2d 89, 103 (D.C. Cir. 1984) (emphasis in original), and nothing in plaintiff's submissions shows a waiver of the federal government's sovereign immunity. Accordingly, his *Bivens* claim against the BOP must be dismissed.

Plaintiff's claims against the individual defendants -- identified as current and former Trust Fund managers and BOP Directors -- in their official capacities, *see* Compl. ¶¶4-8, must also be dismissed. These claims must be treated as if brought against the federal government itself, *see, e.g., Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("[a]s long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity"), and there is no cause of action under *Bivens* against a federal government entity, *see generally Meyer*, 510 U.S. at 486.

### 3. Plaintiff's *Bivens* Claims Against the Individual Defendants in their Individual Capacities Will Be Dismissed[1]

Plaintiff is no more successful in asserting *Bivens* claims against any of the individual defendants in their individual capacities. Critical to a *Bivens* claim is an allegation "that the defendant federal official was personally involved in the illegal conduct." *Simpkins v. District of*

---

[1]     For purposes of this discussion, the Court proceeds as if service of process has been effected on the individual defendants, and assumes that it may exercise personal jurisdiction over them and that venue in this district is proper.

*Columbia Gov't*, 108 F.3d 366, 369 (D.C. Cir. 1997).  Here, plaintiff's complaint fails to allege

that any one of these individual defendants personally was involved in any unconstitutional act.

Nor can plaintiff proceed on a theory that an official is liable for the unconstitutional acts of his

subordinates.  The supervisory role that a defendant may have played does not render him

personally liable for the alleged wrongful acts of others.  *See Monell v. New York City Dep't of*

*Soc. Servs.*, 436 U.S. 658, 691 (1978) (holding that *respondeat superior* liability cannot form the

basis for a § 1983 claim); *see also Cameron v. Thornburgh*, 983 F.2d 253, 258 (D.C. Cir. 1993)

(concluding that a complaint naming the Attorney General and the BOP Director as defendants

based on a theory of *respondeat superior*, without allegations specifying their personal

involvement in the case, does not state a claim against them under *Bivens*); *Epps v. U.S. Attorney*

*General*, 575 F. Supp. 2d 232, 239 (D.D.C.  2008) (citing *Marshall v. Reno*, 915 F. Supp. 426,

429-30 (D.D.C. 1996)) ("A superior official cannot be held liable under Section 1983 or *Bivens*

for the constitutional torts of employees under him or her; the common law theory of respondeat

superior does not pertain to the federal government in this context.").

### 4.  Exhaustion of Administrative Remedies

In relevant part, the Prison Litigation Reform Act ("PLRA") provides that:

> No action shall be brought with respect to prison conditions under
> section 1983 of this title, or any other Federal law, by a prisoner
> confined to any jail, prison, or other correctional facility until such
> administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).  This exhaustion requirement is mandatory and "applies to all prisoners

seeking redress for prison circumstances or occurrences."  *Porter v. Nussle*, 534 U.S. 516, 520

(2002); *see Jones v. Bock*, 549 U.S. 199, 211 (2007).  Exhaustion under the PLRA requires

proper exhaustion, meaning that a prisoner must comply with procedural rules, including filing

deadlines, as a precondition to filing a civil suit in federal court, regardless of the relief offered through the administrative process. *See Woodford v. Ngo*, 548 U.S. 81, 85 (2006); *Booth v. Churner*, 532 U.S. 731, 741 (2001). Thus, a prisoner may file a civil action concerning conditions of confinement under federal law only after he has exhausted the prison's administrative remedies. *See Jackson v. District of Columbia*, 254 F.3d 262, 269 (D.C. Cir. 2001).

"Exhaustion is 'an affirmative defense that the defendants have the burden of pleading and proving.'" *Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir. 2005) (quoting *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004)); *Anderson v. XYZ Correctional Health Servs., Inc.*, 407 F.3d 674, 681 (4th Cir. 2005) ("[A]n inmate's failure to exhaust his administrative remedies must be viewed as an affirmative defense that should be pleaded or otherwise properly raised by the defendant."); *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir.) (holding that "nonexhaustion under § 1997e(a) . . . does not impose a pleading requirement," but "creates a defense [such that] defendants have the burden of raising and proving the absence of exhaustion"), *cert. denied sub nom Alameida v. Wyatt*, 540 U.S. 810 (2003); *Jackson v. District of Columbia*, 89 F. Supp. 2d 48, 56 (D.D.C. 2000) (holding that exhaustion under § 1997e(a) is an affirmative defense), *vacated in part on other grounds*, 254 F.3d 262 (D.C. Cir. 2001).

a.  BOP's Administrative Remedy Program

The BOP's Administrative Remedy Program is the means by which "a federal prisoner may grieve any aspect of his imprisonment." Defs.' Mem., Ex. A ("Watts Decl.") ¶ 4. The process is described as follows:

> The process provides for an attempt at informal resolution. If informal resolution is unsuccessful, the inmate can file a request at

the institutional level to the Warden (BP-9).  28 C.F.R. §§ 542.10, et seq.  If not satisfied with the Warden's response, the inmate has 20 calendar days to file an appeal of the issue(s) to the Regional Director (BP-10).  Finally, if the inmate is dissatisfied with the review and determination by the Regional Director, the inmate has 30 calendar days to file an appeal (BP-11) with the Office of General Counsel (OGC).  See 28 C.F.R. §§ 542.14(a), 542.15(a).

Watts Decl. ¶ 4.  According to the BOP, plaintiff has "filed numerous Administrative Remedy requests during his current incarceration," and has exhausted only one claim relevant to this case. *See id.* ¶ 6.

> b.  Inmate Incentive Pay (Admin. Remedy No. 459706)

With respect to inmate pay, plaintiff submitted a grievance (Admin. Remedy No. 459706) "seeking a pay raise."  Watts Decl. ¶ 10.  He timely appealed the Warden's decision to the Regional Director, and the Regional Director's decision to the OGC.  *Id.*  The OGC denied the request on February 4, 2008 with the following explanation:

> This is in response to your Central Office Administrative Remedy Appeal in which you request that Inmate Performance Pay be increased to keep up with commissary prices and telephone charges.
>
> Our review reveals the Warden and Regional Director adequately responded to the issues you raised in your appeal.  In accordance with Program Statement 5251.05, Inmate Work and Performance Program, "[t]he Assistant Director, Correctional Programs Division[,] shall issue an Operations Memorandum periodically announcing hourly rates for Performance Pay.  The rate shall remain in effect, regardless of the Operations Memorandum's expiration date, until a new rate is announced.  As noted by the Warden, as of this date, the hourly pay rate for Performance Pay has not changed.

*Id.*, Ex. 2 (Response to Administrative Remedy No. 459706-A2).  Plaintiff, then, "successfully

exhausted, without much incident," the grievance pertaining to inmate pay.  Pl.'s Opp'n at 3; *see*

Watts Decl. ¶ 6.

> c.  Interest Earned on Trust Fund Monies (Admin. Remedy No. 459701)
> Prices for Commissary Items and Telephone Calls (Admin. Remedy No. 459703)
> Improper Use of Trust Funds (Admin. Remedy No. 459708)
> Overcrowding (Admin. Remedy No. 459710)

According to the BOP's declarant, plaintiff's grievance (Admin. Remedy No. 459701)

"claiming the BOP is keeping the interest from the trust fund monies" rose to the second level,

and the Regional Director denied the request on September 7, 2007.  Watts Decl. ¶ 7.  Plaintiff

attempted to file an appeal to the OGC, but the appeal was rejected three times for a procedural

defect – plaintiff did not submit the appeal with a copy of the Regional Director's response –

and plaintiff "has defaulted in exhausting his Administrative Remedies for this issue."  *Id.*  His

grievance regarding the improper use of Trust Funds (Admin. Remedy No. 459708) was rejected

by the OGC on October 22, 2007 "because it was untimely filed and he did not enclose a copy of

the BP-10," the Regional Director's response.  *Id.* ¶ 8.  Again, plaintiff attempted to correct these

defects, but did not provide a copy of the Regional Director's response after two more attempts,

and thus "defaulted in exhausting his Administrative Remedies for this issue."  *Id.*  Similarly, the

OGC rejected plaintiff's grievances with respect to overcrowding (Admin. Remedy No. 459710)

and prices for commissary items and telephone calls (Admin. Remedy No. 459703) because

plaintiff failed to submit each with a copy of the Regional Director's response.  *Id.* ¶¶ 9, 11.

Plaintiff recounts in great detail his many attempts to pursue his grievances through all

steps of the Administrative Remedy Program process, *see generally* Pl.'s Opp'n at 2-6, and

documents his unsuccessful efforts to appeal Regional Directors' responses to these four

- 21 -

grievances to the OGC on time and in proper form, *see id.*, Ex. One-Seven.  The Regional

Director requested additional time to respond to Admin. Remedy Nos. 459701, 459703, 459708

and 459710, and the responses were due in October 2007.  *See* Pl.'s Opp'n at 3; *see id.*, Ex. 2-1 -

2-4.  "Plaintiff had complications," however, due to his transfer from a facility in Virginia to

Butner in mid-September 2007.  Pl.'s Opp'n at 4.  Although he received two responses the day

before his scheduled transfer, *id.*, he asked a staff member to place these items "back in the mail

bag," with the expectation that "the responses [would] be forwarded to . . . Butner." *Id.*

On October 15, 2007, plaintiff submitted appeals of Admin. Remedy Nos. 459701,

459702, 459703, 459708 and 459710 to the OGC; except for Admin. Remedy No. 459702, all

were rejected. [2]  *Id.*  Admin. Remedy Nos. 459701, 459703, 459708 and 459710 were untimely.

*See id.*, Ex. 5-7 - 5-8, 5-10 - 5-11.  In addition, all of the grievances were rejected because

plaintiff did not provide a copy of the Regional Director's response with each appeal.  *See id.*,

Ex. 5-7 – 5-11.  Plaintiff was afforded the opportunity to cure these defects, for example, by

providing staff verification that the untimely filings were not his fault.  *See id.*  Although plaintiff

promptly explained to the Central Office that he did not receive the notices of rejection due to his

transfer, he deemed it "impossible for staff to verify that [he] didn't receive [the] responses," *id.*,

Ex. 6-1, and did not seek staff verification as the APR allows.  The OGC rejected these appeals

again because plaintiff failed to attach a copy of the Regional Director's responses, Pl.'s Opp'n

---

[2]      Plaintiff has filed a motion to amend his complaint [Dkt. #36] and with a supplement to
this motion [Dkt. #41] he has filed a proposed amended complaint [Dkt. #41-1] which omits the
Eighth Amendment claims pertaining to overcrowding and population caps.  The Court presumes
that plaintiff no longer wishes to pursue the Eighth Amendment claims and, accordingly, the
Court will not discuss Admin. Remedy No. 459702, which "claim[ed] that [BOP] institutions do
not have fire or health codes pertaining to facility population."  Pl.'s Opp'n, Ex. 1-2 (Response to
Admin. Remedy No. 459702-A1 dated December 13, 2007).  And in light of the Court's ruling
on defendants' dispositive motion, the Court will deny plaintiff's motion to amend as futile.

at 5; *see id.*, Ex. 6-6 – 6-9, as was the case for plaintiff's subsequent submissions, *see id.*, Ex. 7-1 – 7-8.

Plaintiff attributes his inability to exhaust his administrative remedies to the BOP's failure to deliver the Regional Director's responses to him in a timely manner, *see* Pl.'s Opp'n at 4-5, or to provide upon request copies of the various Regional Responses for submission to the Central Office, *see id.* at 5-6, 10-11, rendering the Administrative Remedy Program "unavailable" to him, *id.* at 10.   Had he "received whatever Regional Response[s] that existed he could have immediately appealed them to the Central Office, exhausting his remedies."   *Id.* at 7. He describes his efforts as "relentless," *id.* at 1, and points to his diligence and reasonable attempts to push forward with his Administrative Remedy Program requests, *id.* at 9-10, only to have those attempts thwarted repeatedly through the "[i]naction of BOP [s]taff," *id.* at 11.   On this basis, plaintiff attempts to justify his failure to exhaust administrative remedies prior to filing this lawsuit.

Plaintiff's allegations that he did not receive the Regional Director's responses timely does not render the Administrative Remedy Program unavailable to him.   For example, plaintiff was provided an opportunity to overcome the problem of an untimely appeal by obtaining staff certification that the untimely filing of Admin. Remedy Nos. 459701, 459703, 459708 and 459710 was not his fault; he did not avail himself of this opportunity.   Nor did plaintiff submit his appeals in proper form by attaching a copy of the Regional Director's responses.   He fails, then, to establish exhaustion with respect to Admin. Remedy Nos. 459701, 459703, 459708 and 459710; these claims therefore will be dismissed.   *See, e.g., Oaks v. Pane*, No. 7:11-cv-0041, 2011 WL 4102273, at *3 (W.D. Va. Sept. 14, 2011) (finding that plaintiff who admittedly did not file appeals to the Regional Director or the OGC did not exhaust his administrative

remedies).  His assessment as to the efficacy of an appeal does not excuse him from compliance

with all steps of the Administrative Remedy Program process.  *See Alexander v. Tippah County,*

*Miss.*, 351 F.3d 626, 630 (5th Cir. 2003) (rejecting appellant's argument that facility's grievance

procedures were inadequate where the law requires that he "exhaust such administrative

remedies as are 'available,' whatever they may be").   "A plaintiff's belief that pursuing his

administrative remedies would be futile does not excuse him from the PLRA's exhaustion

requirement since a prisoner is required to exhaust regardless of the value of the relief offered

through administrative avenues."  *Tereshchuk v. Bureau of Prisons*, No. 06-1031, 2007 WL

474179, at *2 (D.D.C. Feb. 9, 2007) (citing *Booth,* 532 U.S. at 741).

5.  Plaintiff Fails to State a Fifth Amendment Claim Regarding Inmate Pay

According to plaintiff, inmate incentive pay "has never been raised," Compl. ¶ 49, even

though "[c]ommissary prices and telephone rates have constantly increased," *id.* ¶ 50.  He deems

this circumstance "cruel and unusual punishment" because inmates "are subject to the ravages of

inflation due to no rise in . . . incentive pay," *id.* ¶ 51.  Defendants respond by arguing that

inmates neither have a protected liberty interest in prison employment, *see* Defs.' Mem. at 24,

nor a constitutional right to purchase items from the commissary or to purchase such items at a

particular price, *id.* ¶ 25.   Of all the arguments plaintiff puts forth in his lengthy opposition

memorandum, none addresses this issue.

In the District of Columbia Circuit, it is established that "an argument in a dispositive

motion that the opponent fails to address in an opposition may be deemed conceded."  *Rosenblatt*

*v. Fenty*, 734 F. Supp. 2d 21, 22 (D.D.C. 2010); *see Buggs v. Powell,* 293 F. Supp. 2d 135, 141

(D.D.C. 2003) (citing *Fed. Deposit Ins. Corp. v. Bender,* 127 F.3d 58, 67-68 (D.C. Cir. 1997))

- 24 -

(stating that, "when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, the court may treat those arguments that the plaintiff failed to address as conceded).  The plaintiff's failure to address the argument leads the Court to grant the motion as conceded.

Even if plaintiff had exhausted his administrative remedies with respect to his complaint regarding inmate incentive pay, and had properly raised the issue in response to the BOP's motion, the claim itself is subject to dismissal under Rule 12(b)(6).  Whether and how to employ inmates, and their rate of pay, are decisions properly left to BOP officials.  18 U.S.C. § 4125(d); *see Serra v. Lappin*, 600 F.3d 1191, 1199 (9th Cir. 2010).  An inmate has no protected interest in prison employment, *see, e.g., Ingraham v. Papalia*, 804 F.2d 595, 596 (10th Cir. 1986) (per curiam) ("The Constitution does not create a property or liberty interest in prison employment."), let alone compensation at a particular rate, *see Jones v. United States*, 412 Fed. App'x 690, 691 (5th Cir. 2011) (per curiam) (finding no constitutional violation arising from improper method of calculating overtime pay "since [the prisoner plaintiff] did not have a constitutional right to be compensated for work performed while he was incarcerated").  Nor does an inmate enjoy a "federal right to be able to purchase items from a commissary . . . at any particular price." *Hopkins v. Keefe Commissary Network Sales*, No. 07-0745, 2007 WL 2080480, at *5 (W.D. Pa. July 12, 2007) (internal citations omitted); *see Tokar v. Armontrout,* 97 F.3d 1078, 1083 (8th Cir. 1996) ("[W]e note that we know of no constitutional right of access to a prison gift or snack shop."); *French v. Butterworth,* 614 F.2d 23, 25 (1st Cir. 1980) ("[T]here is simply no legal basis for a demand that inmates be offered items for purchase at or near cost.").

The Eighth Amendment does not allow "barbarous" punishment which contravenes society's "evolving standards of decency."  *Rhodes v. Chapman,* 452 U.S. 337, 346 (1981).  But

plaintiff does not "state a claim of constitutional significance" by alleging the existence of "uncomfortable, restrictive, or inconvenient conditions of confinement," *Arehart v. Keefe Commissary Network Sales*, No. 7:09-cv-0308, 2009 WL 2753196, at *2 (W.D. Va. Aug. 26, 2009), as in his alleged lack of resources available to purchase commissary items. *See McCall v. Keefe Supply Co.*, 71 Fed. App'x 779, 780 (10th Cir. 2003) (rejecting prisoner's Eighth Amendment claim that "he has a constitutionally protected interest in buying stamps as cheaply as possible").

## III.  CONCLUSION

With respect to plaintiff's Freedom of Information Act claims, the BOP demonstrates that it conducted a reasonable search for records responsive to plaintiff's requests for telephone records and that plaintiff failed to exhaust his administrative remedies regarding his requests for information about the DNA Act, Administrative Remedy Index, Reports for the Trust Fund, and Public Law 104-134.  However, the BOP has not explained adequately its interpretation of or search for records responsive to plaintiff's request for information about Code 408.

With respect to plaintiff's constitutional claims, the Court concludes that this *pro se* prisoner cannot represent the interests of a class of inmates.  Even if plaintiff were to bring these claims only on his own behalf, all are subject to dismissal for failure to state a claim upon which relief can be granted.

Accordingly, defendants' motion to dismiss or for summary judgment will be granted in part and denied in part, and plaintiff's motions will all be denied.  An Order accompanies this Memorandum Opinion.


DATE: March 19, 2012                        JOHN D. BATES
                                            United States District Judge