UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

DARRELL JAMES DEBREW,

                Plaintiff,

      v.

MICHAEL ATWOOD, *et al.*,

                Defendants.

Civil Action No. 10-0650 (JDB)

---

**MEMORANDUM OPINION**

The United States Court of Appeals for the District of Columbia Circuit remanded this matter for further proceedings on three claims. *See DeBrew v. Atwood*, 792 F.3d 118 (D.C. Cir. 2015). Now before this Court are defendants' Motion to Dismiss Plaintiff's Amended Complaint and for Summary Judgment, ECF No. 83, and plaintiff's cross-motion for summary judgment, ECF No. 87.[1] For the reasons discussed below, defendants' motion will be granted, and plaintiff's cross-motion will be denied.

I. BACKGROUND

Plaintiff is a former federal inmate who had "written and published several novels during his time in prison." *DeBrew*, 792 F.3d at 130. He was released from the custody of the Federal Bureau of Prisons ("BOP") on May 6, 2016, and now is serving a 60-month term of supervised

---

[1] Also before the Court is plaintiff's "Motion to Forgive Misfiling By Plaintiff and Reverse Extension of Time for Filing," ECF No. 92. Plaintiff explains that his prior opposition to defendants' dispositive motion, ECF No. 86, is an incomplete copy, and he attaches a corrected copy, ECF No. 92-1. The Court grants plaintiff's motion, designates the corrected copy "Pl.'s Opp'n," and treats the document as if it had been timely filed.

release. Mem. of P. & A. in Support of Defs.' Mot. to Dismiss Pl.'s Am. Compl. and for Summ. J. ("Defs.' Mem."), Ex. B ("Nastro Decl.") ¶ 4.

In September 2007, plaintiff submitted a request to BOP under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. Am. Compl. ¶ 11; Defs.' Mem., Ex. A ("Fourth Moorer Decl.") ¶ 5. He sought "[a]ll documentation for making Conducting a Business (408) a prohibited act." Defs.' Mem., Ex. C (Freedom of Information/Privacy Act Request dated September 5, 2007) at 1; Am. Compl. ¶ 11.[2] BOP responded by providing plaintiff a copy of "the program statement on Inmate Discipline," Fourth Moorer Decl. ¶ 9, and related materials that had been published in the Federal Register, *id*. ¶¶ 12, 15; *see* Am. Compl. ¶ 12.

Plaintiff alleges that BOP "failed to adequately supply information as required by the FOIA," Am. Compl. ¶ 14, because it has released "[n]o documents as to how Code 408 came into existence[,]" *id*. ¶ 13; *see DeBrew*, 792 F.3d at 121 ("DeBrew argues the BoP's response was inadequate because he did not receive records generated by the agency in the course of deciding to adopt the rule prohibiting an inmate from conducting a business.").

According to plaintiff, "all inmates' funds deposited in BOP's Commissary Fund generate interest on a daily basis." Am. Compl. ¶ 15.[3] He claims that BOP "deprives inmates of interest generated [from these] funds" in violation of the inmates' right to due process under the Fifth Amendment of the United States Constitution. *Id*. ¶ 16.

---

[2] The BOP disciplinary violation previously designated Code 408 now is designated Code 334 (Conducting a business; conducting or directing an investment transaction without staff authorization). *See* Nastro Decl. ¶ 5 n.1; 28 C.F.R. § 541.3 (Table 1 – Prohibited Acts and Available Sanctions).

[3] "Commissary funds, Federal prisons," are classified as trust funds, *see* 31 U.S.C. § 1321(a)(22), and the United States acts as the trustee, *see id*. § 1321(b)(1). BOP Program Statement 4500.11, Trust Fund/Deposit Fund Manual (April 9, 2015), defines the term "Trust Fund" as "[t]he 15X8408 Account designated by the U.S. Treasury for programs, goods, and services for the benefit of inmates (e.g., Commissary)," BOP Program Statement 4500.11 at 10; *see id*. at 15 ("The 'Commissary Fund' is generally referred to as the 'Trust Fund[.]'").

While incarcerated at FCI Loretto in June 2006, plaintiff allegedly "was found guilty of violating BOP's Code 408 (Conducting a Business) and ordered to remove his web-site from the World Wide Web and not to use the mails in regards to his books and manuscripts." *Id.* ¶ 17. In April 2009, while incarcerated at FCI Butner, plaintiff again "was found guilty of Code 408," this time because he had "receiv[ed] a Royalty Check . . . for a book entitled Keisha." *Id.* ¶ 18.

Defendants represent that "[p]laintiff was found to have committed BOP code 408 (Conducting a Business) during a Unit Discipline Committee hearing" on April 21, 2009. Nastro Decl. ¶ 5. BOP has "no other record of discipline with respect to [p]laintiff committing the . . . prohibited act of Conducting a Business." *Id.* Whatever the number of Code 408 violations plaintiff may have committed, plaintiff asserts that the sanctions imposed violated his First Amendment "right to Freedom of Expression." *Id.* ¶ 19. Further, he claims that his "property rights have been limited in violation of the Fifth Amendment." *Id.* ¶ 20.

Plaintiff brings his FOIA claim against BOP. *See id.* ¶¶ 8, 26. He demands a declaratory judgment stating "that [BOP has] improperly withheld agency records," an order directing BOP "to provide requested information," payment of "reasonable [a]ttorney fees and [l]itigation costs," and an award of "punitive damages for willfully improperly withholding agency records." *Id.* at p. 8 (page number designated by ECF).

The constitutional claims are brought against the current and former BOP Directors and Trust Fund Managers in their official and individual capacities. *See id.* ¶¶ 4-7, 27-28. Plaintiff demands a "[d]eclaratory [j]udgment that defendants violated inmates' Fifth Amendment rights by keeping interest earned off their funds," and payment of interest on the interest withheld, *id.* at p. 8, as well as a preliminary injunction, *id.* at p. 9. He also demands that defendants "organize a system that pays inmates . . . interest earned on their money, just like a bank." *Id.*

3

Plaintiff demands an injunction to "keep[] the BOP from using Code 408" and a "[d]eclaratory [j]udgment that Code 408 violates inmates' Fifth and First Amendment rights." *Id*. Lastly, plaintiff demands an award of $10,000,000,000 in [p]unitive, [c]ompensatory, and [a]ctual damages." *Id.*[4]

## II. DISCUSSION

### A. *Plaintiff's FOIA Claim*

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009). Courts grant summary judgment to an agency as the moving party if it shows that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "When, as here, an agency's search is questioned, the agency is entitled to summary judgment upon a showing, through declarations that explain in reasonable detail and in a nonconclusory fashion the scope and method of the search, that it conducted a search likely to locate all responsive records." *Brestle v. Lappin*, 950 F. Supp. 2d 174, 179 (D.D.C. 2013) (citing *Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982)). "To successfully challenge an agency's showing that it complied with the FOIA, the plaintiff must come forward with 'specific facts' demonstrating that there is a genuine issue with respect to whether the agency has improperly withheld extant agency records." *Span v. U.S. Dep't of Justice*, 696 F. Supp. 2d 113, 119 (D.D.C. 2010) (quoting *Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 (1989)).

---

[4] Plaintiff's request for class action status, *see* Am. Compl. ¶¶ 21-24, is denied. Plaintiff is without legal training and he cannot represent the interests of a class of present, past, and future inmates. *See DeBrew*, 792 F.3d at 132 (finding no abuse of district court's discretion in concluding plaintiff could not fairly and adequately represent interests of the proposed class); *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975) ("[It] it is plain error to permit this imprisoned litigant who is unassisted by counsel to represent his fellow inmates in a class action.").

An agency "fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents." *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011) (citations and internal quotation marks omitted). "The Court applies a 'reasonableness' test to determine the 'adequacy' of search methodology, consistent with the congressional intent tilting the scale in favor of disclosure." *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 27 (D.C. Cir. 1998) (internal citations omitted). "[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate." *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984) (citing *Weisburg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.D.C. 1983)). The agency may submit affidavits or declarations to explain the method and scope of its search, *see Perry*, 684 F.2d at 127, and such affidavits or declarations are "accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents," *Safecard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation marks and citation omitted).

BOP staff interpreted plaintiff's FOIA request as one "seeking BOP policy materials regarding the Prohibited Act of Conducting a Business, Code 408." Fourth Moorer Decl. ¶ 6.[5] The request made its way to two divisions within BOP. *See id*.

---

[5] BOP previously interpreted plaintiff's FOIA request as one "seeking documentation that makes conducting a business a prohibited act." Defs.' Opp'n to Pl.'s Mot. for Summ. J. and Reply to Pl.'s Opp'n to Defs.' Renewed Mot. for Summ. J., Ex. A (Third Moorer Decl.) ¶ 3. "For any inmate action to be made into a prohibited act, the BOP must put the inmate on notice. That notice was done through Program Statement 5270.08. So, that Program Statement is what made conducting a business a prohibited act and was thus considered responsive to [p]laintiff's request." *Id*., Ex. A ¶ 3. BOP "reconsider[ed] the scope of its search for records" after having consulted the Assistant United States Attorney representing the agency in this litigation, notwithstanding its "belie[f] that its original interpretation of the FOIA request was appropriate." *Id*., Ex. A ¶ 4.

The Correctional Programs Division "is solely responsible for the orderly running of each BOP institution," and for "making and enforcing rules, regulations, and disciplinary codes[.]" *Id*. ¶ 7. Insofar as plaintiff's FOIA request "sought policy documents concerning Code 408," it was thought that, "if any records exist, the Correctional Programs Division would have [them]." *Id*.

BOP's declarant explains that Correctional Services Division records "are maintained electronically and in hard copy." *Id*. ¶ 8. Electronic "records are maintained in the BOP's internal computer database on internal shared directory." *Id*. "Other electronic sources include the BOP's Sallyport, Policy Directory, 500 Series link," that is, a repository accessed via the internet containing BOP program and policy statements. *Id*. Hard copy files are kept in file cabinets in the Division's offices. *Id*.

Correctional Services Division staff used four terms, "Inmate Discipline," "Prohibited Act," "Conducting a Business," and "Prohibited Act 408," for searching electronic and hard copy files. *Id*. ¶ 9. The only responsive record located through a search conducted on June 13, 2012 "was the program statement on Inmate Discipline," a copy of which was released to plaintiff in full. *Id*. A second search on July 8, 2015 using these same search terms located only the same program statement. *Id*.

The Rules Administrator Office is a part of the Legislative and Correctional Issues Branch ("LCI") within the BOP's Office of General Counsel. *Id*. ¶ 10. Plaintiff's FOIA request was sent to LCI because "any materials regarding the policy adoption of the Prohibited Act of Conducting a Business, Code 408, [are] maintained" there. *Id*.

The Rules Administrator, who herself conducted the search for records responsive to plaintiff's FOIA request, "develops regulations and modifies regulations based on the [BOP's]

6

needs." *Id*. ¶ 11. "She also maintains the Federal Register publications regarding the BOP regulations found in 28 CFR Chapter V[.]" *Id*. Making rules "follow[s] a standard process whereby the agency writes proposed rules, publish[es proposed rules] in the Federal Register, and after a period of public comment[,] either modifies the proposed rule pursuant to public comment and publishes the final rule[,] or simply publishes the final rule," which subsequently is "incorporated into the Code [of] Federal Regulations." *Id*. ¶ 12.

LCI began its search of "electronic and hard copy files that contained proposed and final rules using the search terms of "inmate discipline" and "conducting a business." *Id*. Next, the Rules Administrator "reviewed 28 CFR § 541.3, which contains the Tables listing the Prohibited Acts" and noted the "parenthetical listing [of] the most recent Federal Register citations relevant to that regulation." *Id*. Using the parenthetical listings as search terms, she "retrieved those published Federal Register documents (75 FR 76267, Dec. 8, 2010; 75 FR 81854, Dec. 29, 2010)," and found that neither "contain[ed] an explanation for prohibited act code 408[.]" *Id*. She worked backward, using the parenthetical listing in these documents to locate earlier versions of the regulation, to retrieve "the earliest genesis of the regulation," that is, "the proposed rule which first published the regulation and eventually established the Table of Prohibited Act Codes." *Id*. The Rules Administrator ultimately determined that "the only documents that LCI has that are responsive to [plaintiff's] request are no different than those that were publicly available in the Federal Register[.]" *Id*. She had located "24 documents that totaled 341 pages," *id*., and explains that all of these pages are Federal Register Notice records that the BOP must make available to the public under 5 U.SC. § 552(a)(1), *id*. ¶ 13. Because the responsive records already were available publicly, "it was determined that [p]laintiff could not make a request for [them] and the BOP was not required to provide [them to plaintiff] pursuant

7

to [5 U.S.C. § 552(a)(3)(A)]." *Id*. Nevertheless, "for the limited purpose of resolving this case," the BOP made a discretionary disclosure of these records. *Id*. ¶ 15.

Plaintiff "strongly avers that documentation exists for making 'Conducting a Business' a prohibited act before publication in the Federal Register." Pl.'s Counter Reply and Request for Mot. for Summ. J. ("Pl.'s Opp'n") at 2. He opines that there must have been "reports, letters, memos, [and] minutes from meetings" preceding publication in the Federal Register. *Id*. "Even a memo (pre or post) for publication in the Federal Register would constitute 'documentation' for making 'Conducting a Business['] a [p]rohibited [a]ct." *Id*. at 3. Plaintiff presumes that "LCI or an attorney within the BOP's Office of General Counsel [would have been] contacted . . . when Code 408 was legislated into BOP Policy." *Id*. This is the paper trail he seeks. *See id*. Unless BOP can explain how it could have promulgated the relevant regulation without any consultation or deliberation prior to publication, plaintiff asserts that its searches for responsive records were inadequate. *See id*. at 3-4. Plaintiff moves for summary judgment in his favor on the ground that BOP has failed to conduct an adequate search for and to release the responsive records. *Id*. at 4.

BOP responds, and the Court concurs, that plaintiff's opposition "is rife with speculation[.]" Defs.' Combined Opp'n to Pl.'s Mot. for Summ. J. and Reply to Pl.'s Opp'n to Defs.' Dispositive Mot. ("Reply") at 2. "[S]peculation as to the existence of additional records . . . does not render the searches inadequate." *Concepción v. FBI*, 606 F. Supp. 2d 14, 30 (D.D.C. 2009); *see Baker & Hostetler LLP v. U.S. Dep't of Commerce*, 473 F.3d 312, 318 (D.C. Cir. 2006) (finding the requester's "assertion that an adequate search would have yielded more documents is mere speculation" and affirming district court's decision that agency's search procedure was "reasonably calculated to generate responsive documents").

BOP's interpretation of plaintiff's FOIA request for records about "how Code 408 came into existence," Am. Comp. ¶ 13, was reasonable. Code 408, now designated Code 334, is a disciplinary infraction established and defined by a federal regulation, proposed and final versions of which have been published in the Federal Register, and have been incorporated into a BOP program statement. The decisions to forward plaintiff's request to the Correctional Services Division and to LCI were reasonable: the former is responsible for making and enforcing BOP regulations and disciplinary codes at the institution level, and the latter is responsible for developing and modifying BOP regulations. As the declarant explains, these locations are the most likely places to have found responsive records. On review of BOP's fourth supporting declaration, which "disclose[s] the search terms used . . . and [describes] the type of search performed," *DeBrew*, 792 F.3d at 122, the use of terms such as "inmate discipline" and "Conducting a Business" in the circumstances of this case is appropriate.

BOP's failure to produce specific documents does not undermine the adequacy of its searches. *See, e.g., Jarvik v. CIA*, 741 F. Supp. 2d 106, 115-16 (D.D.C. 2010). Nor does the adequacy of BOP's searches turn on the level of plaintiff's satisfaction with the results. *See, e.g., Tracy v. U.S. Dep't of Justice*, 191 F. Supp. 3d 83, 93 (D.D.C.), *aff'd*, 664 F. App'x 8 (D.C. Cir. 2016). The Court concludes that BOP's searches for responsive records were reasonably calculated to locate responsive records, and therefore grants summary judgment for BOP on this FOIA claim.

### B. Plaintiff's Constitutional Claims

"Article III of the Constitution grants the federal courts the power to decide legal questions only in the presence of an actual 'Cas[e]' or 'Controvers[y].'" *Wittman v. Personhuballah*, 136 S. Ct. 1732, 1736 (2016). "Standing to sue . . . is an aspect of the case-or-

controversy requirement." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 64 (1997) (citation omitted). A plaintiff has standing if he "shows that he has suffered an injury in fact, that the injury is fairly traceable to the conduct being challenged, and that the injury will likely be redressed by a favorable decision." *Wittman*, 136 S. Ct. at 1736 (citation and internal quotation marks omitted). "[A]n actual controversy must be extant at all stages of review, not merely at the time the complaint is filed," *Steffel v. Thompson*, 415 U.S. 452, 460 n.10 (1974), and "a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome," *Powell v. McCormack*, 395 U.S. 486, 496 (1969); *see Royer v. Fed. Bureau of Prisons*, 808 F. Supp. 2d 274, 279 (D.D.C. 2011).

Defendants move to dismiss plaintiff's claims for declaratory and injunctive relief on the grounds that plaintiff lacks standing and that these claims are now moot. *See generally* Defs.' Mem. at 13-17. Plaintiff responds that he "still maintains an actual case and controversy to satisfy Article III of the U.S. Constitution" by virtue of his demand for damages. Pl.'s Opp'n at 4. He contends that "[s]eeking damages, regardless of prison release, negates mootness." *Id*. But even if plaintiff is able to pursue his claim for money damages, his claims for declaratory and injunctive relief still must be dismissed.

In *Maydak v. United States*, 630 F.3d 166 (D.C. Cir. 2010), the D.C. Circuit found that, "[s]ince federal prison inmates are the sole beneficiaries of the Trust Fund, a claim for reimbursements to the Fund can only be pursued by a current federal inmate," *id*. at 174. The prisoner plaintiffs' release from BOP custody rendered their Trust Fund claims moot. *See generally id*. at 174-77. Here, plaintiff's release from BOP custody means that he is no longer a Trust Fund beneficiary with a current or continuing personal interest in the Trust Fund.

Therefore, plaintiff now lacks standing to bring claims for declaratory and injunctive relief with regard to the Trust Fund and these claims are moot.

Similarly, plaintiff's release from BOP custody means that he no longer is subject to BOP's disciplinary rules, including Code 408. Plaintiff now lacks standing to bring claims for declaratory and injunctive relief with regard to Code 408 as well, and these claims are therefore moot.

Plaintiff demands money damages from Atwood and Lappin in their individual capacities under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). Defendants move to dismiss on the ground that the factual allegations set forth in the amended complaint "lack specificity regarding [their] involvement," Defs.' Mem. at 17, and thus fail to state a claim upon which relief can be granted, *see id*. at 20-22.

Critical to a *Bivens* claim are allegations "that the defendant federal official was personally involved in the illegal conduct." *Simpkins v. District of Columbia Gov't*, 108 F.3d 366, 369 (D.C. Cir. 1997) (citation omitted); *see Scinto v. Fed. Bureau of Prisons*, 608 F. Supp. 2d 4, 8 (D.D.C.) ("*Bivens* by its very nature is a private damages action against individual federal employees for violating a citizen's constitutional rights."), *aff'd,* 352 F. App'x 448 (D.C. Cir. 2009). Plaintiff's original complaint "lacks facts showing the individual defendants were personally involved in the alleged constitutional violations," and now the Court must "consider whether [the amended] complaint includes sufficient factual allegations to state a claim for relief against any of the individual defendants in their personal capacities in connection with the two constitutional claims . . . remanded for further proceedings." *DeBrew*, 792 F.3d at 131.

A complaint need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief[] in order to give the defendant fair notice of what the . . . claim is and

the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citations omitted). "Although for the purposes of [a] motion to dismiss [the Court] must take all the factual allegations in the complaint as true, [it is] not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (citation omitted).

Under the heading "Supervisory Liability," plaintiff alleges that "[d]efendants are aware of all mentioned practices and the policies (Program Statements) and have adopted and implemented them; thus, adopting their Constitutional Violations of inmates' rights." Am. Compl. ¶ 25. It is clear from this statement that plaintiff intends to hold Atwood and Lappin responsible simply because they held supervisory roles. After all, plaintiff asks, "[w]hen an institution violates constitutional rights per its policies and practices, how can the director not be held liable[?]" Pl.'s Opp'n at 5 (emphasis in original). Plaintiff cannot proceed on a theory that an official is liable for the unconstitutional acts of his subordinates, however. The supervisory roles that these defendants may have played do not render them personally liable for the alleged wrongful acts committed by others. *See Cameron v. Thornburgh*, 983 F.2d 253, 258 (D.C. Cir. 1993) (concluding that a complaint naming the Attorney General and the BOP Director as defendants based on a theory of *respondeat superior*, without allegations specifying their personal involvement in the case, does not state a claim against them under *Bivens*).

Furthermore, plaintiff's amended complaint supplies no more than "a naked assertion," *Twombly*, 550 U.S. at 557, of the individual defendants' supposed participation in the events giving rise to the constitutional claims. A bald assertion that Atwood and Lappin were aware of or adopted certain policies or practices is not entitled to a presumption of truth. *See Ashcroft v. Iqbal*, 556 U.S. 662, 680-81 (2009). Nor does the assertion establish the personal involvement of

these BOP officials in depriving inmates of Trust Fund interest or infringing on First and Fifth Amendment rights stemming from the Code 408 violation. *See Qian Ibrahim Zhao v. Unknown Agent of CIA*, 411 F. App'x 336, 336 (D.C. Cir. 2010) (affirming dismissal of *Bivens* claim against Secretary of Department of Homeland Security because plaintiff had not alleged Secretary "through her 'own individual actions, has violated the Constitution'"); *Parks v. Samuels*, No. 1:13-CV-0742, 2015 WL 5954185, at *10 (M.D. Pa. Oct. 13, 2015) (dismissing *Bivens* claim against defendants who allegedly "were involved in the creation or promulgation of policies that [plaintiff] claims led to inadequate prison library facilities"); *Ballard v. Holinka*, 601 F. Supp. 2d 110, 120 (D.D.C. 2009) (dismissing *Bivens* claim against former BOP Director who allegedly enforced or acquiesced in unconstitutional action of subordinate employees).

What remains is a conclusory statement that Atwood and Lappin violated rights protected under the First and Fifth Amendments to the United States Constitution. That is without sufficient factual support, and the Court concludes that the amended complaint fails to state a plausible *Bivens* claim for money against these individual defendants.[6]

### III. CONCLUSION

The Court concludes that BOP has fulfilled its obligations under the FOIA, and its motion for summary judgment is granted. With respect to plaintiff's constitutional claims, the

---

[6] But even if plaintiff had managed to state his *Bivens* claim adequately, there remains a question as to whether the Court may exercise personal jurisdiction over Atwood and Lappin in their individual capacities. They are not District of Columbia residents, *see* Defs.' Mem., Ex. D (Atwood Decl.) ¶ 3; *see id.*, Ex. E (Lappin Decl.) ¶ 3, over whom the Court may exercise general jurisdiction, *see* D.C. Code § 13-422; *West v. Holder*, 60 F. Supp. 3d 190, 193-94 (D.D.C. 2014) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)), *aff'd sub nom. West v. Lynch*, 845 F.3d 1228 (D.C. Cir. 2017). And it is not entirely clear that the Court may exercise specific jurisdiction over these non-resident defendants under the District of Columbia's long-arm statute, *see* D.C. Code § 13-423(a), or by virtue of defendants' contacts with this forum, *see Dougherty v. United States*, 156 F. Supp. 3d 222, 229 (D.D.C. 2016) (noting that "federal employees are not subject to suit in the District of Columbia based merely on the fact that their employing agency is headquartered in this jurisdiction or maintains offices here").

Court concludes that plaintiff lacks standing to bring his claims for declaratory and injunctive relief and that these claims are moot.  The Court also concludes that plaintiff's amended complaint fails to state a *Bivens* claim against the individual defendants, and their motion to dismiss is granted.  An Order accompanies this Memorandum Opinion.

DATE: March 27, 2017                                  /s/
                                                      JOHN D. BATES
                                                      United States District Judge